UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| FELICIA SCROGGINS | CIVIL NO. 5:12-cv-2247 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CITY OF SHREVEPORT | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Plaintiff Felicia Scroggins brings claims against the City of Shreveport ("the City") for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* Ms. Scroggins is a firefighter, and her claims arise primarily out of discipline she suffered after an altercation with another firefighter. The City has moved for summary judgment on all of Ms. Scroggins' claims. [Record Document 25]. For the following reasons, the Court **GRANTS** the City's Motion for Summary Judgment [Record Document 25] and dismisses Ms. Scroggins' claims **with prejudice**.

I.   **Factual Background**[1]

   A.   **The September 20, 2010 Incident and Resulting Discipline**

On September 20, 2010, Ms. Scroggins and other Shreveport firefighters responded to a residential fire in Shreveport, LA. Ms. Scroggins and Captain Reggie Taylor were part of Fire Engine Six. Fire Engine Four, which was run by Captain Jeff

---

[1] Unless otherwise noted, the following narrative is taken from the undisputed portions of the parties' statements of facts.

Cash, also responded.[2]  While attempting to put out the fire, Ms. Scroggins and Captain Cash became involved in an altercation.  The exact details of the incident are unclear, but for the purposes of the present motion the Court will follow the narrative Ms. Scroggins gives in the grievance she filed shortly afterward.  Ms. Scroggins relates that she entered the residence with Captain Taylor, who quickly realized that he had forgotten his helmet and told her to wait while he went to retrieve it.  Meanwhile, Captain Cash arrived.  He shoved Ms. Scroggins and asked her what she was waiting for and where the hose was.  Ms. Scroggins fell on a table, dropped the hose, and sprained her left ankle.  She retrieved the hose and followed it "to the end where someone had it."  [Record Document 25-3, p.17].  She then started pulling the line, "saying I got it, I got it."  Id.  Captain Cash opened the line, releasing water, and told Ms. Scroggins "if you don't stop I will have your fucking ass written up."  Id.  Ms. Scroggins asked to whom she was speaking, and when she heard "Capt. Somebody . . . [she] did stop pulling the line because [she] did hear Capt."  Id.  During her deposition, approximately three years later, Ms. Scroggins testified that she did not pull on the line while water was flowing.  [Record Document 28-4, pp. 12-15].

On September 22, 2010, two days after the incident, Ms. Scroggins filed a criminal complaint with the Shreveport Police Department, alleging that Captain Cash assaulted her by pushing her down and cursing at her.  The police report does not show that Ms. Scroggins complained of either race or gender discrimination.  It

---

[2] Ms. Scroggins is an African-American female and Captain Cash is a white male. The record does not make clear the race of the other participants in this narrative.

concludes that "[t]here [was] no probable cause to show Mr. Cash intentionally used force upon Ms. Scroggins." [Record Document 25-3, pp. 14-16]. As mentioned above, Ms. Scroggins then filed a grievance via inter-office memo on September 23, 2010. The grievance relates her version of what happened, notes that she did not curse first, expresses her opinion that her supervisors should have been supervising her as she fought the fire rather than fighting the fire themselves, and suggests that Captain Cash may have anger problems. [Record Document 25-3, pp. 17-18]. The grievance does not, however, mention race or gender discrimination.

On Sept. 27, 2010, Deputy Fire Chief Tom Self initiated an internal affairs investigation, and on October 16, 2010 the Chief of the Shreveport Fire Department, Brian Crawford, received the resulting report. Chief Crawford attests that the investigation found four substantiated violations by Captain Cash and eleven violations by Ms. Scroggins and that the most serious substantiated violations "involved Ms. Scroggins not obeying Captain Cash's instructions and attempting to take the hose from Captain Cash while he was trying to fight a fire." Id. at 27.

Deputy Self scheduled a pre-disciplinary conference for Ms. Scroggins on October 12, 2010, two days before she was scheduled to return from a vacation. Deputy Self determined that Ms. Scroggins should not be allowed at work until the conference was held, so he allowed Ms. Scroggins to remain on vacation. The alternative would have been to place her on administrative leave with or without pay. He also prohibited Ms. Scroggins from performing any duty at the station, which of

course precluded her from working overtime. Id. at 32-34. The conference had to be pushed back two weeks, to October 27, 2010, so Ms. Scroggins was effectively prevented from working from the time she returned from vacation until the time of her conference.

After the conference, Ms. Scroggins received a forty-five day suspension with loss of benefits and seniority. It is unclear from the record what punishment Captain Cash received, but it is undisputed that it was less severe than Ms. Scroggins' punishment. Ms. Scroggins characterizes Captain Cash's discipline in her opposition as a mere "slap on the wrist." [Record Document 28-2, p.9]. Chief Crawford explains the choice of different punishments as follows: while Captain Cash's misconduct "involved his use of inappropriate language when correcting Ms. Scroggins," Ms. Scroggins' violations could have jeopardized the safety of "everyone involved in the firefighting operation:"

> This disciplinary action was taken due to the serious nature of Ms. Scroggins' violations. The substantiated violation of trying to take the hose away from a captain during an active fire engagement inside a burning residence was an extremely serious on duty misconduct violation. Firefighting is one of the most dangerous and unpredictable occupations. Teamwork and clear communication, along with an unhesitating willingness to follow the directions of superiors are necessary to ensure the safety of all personnel, save lives, and limit the amount of property damage. Ms. Scroggins' actions on September 20, 2010 jeopardized the safety of herself, possible occupants, and everyone involved in the firefighting operation. At the time she disobeyed Captain Cash and then attempted to take the hose from him, Captain Cash was initiating the attack on the fire which was burning inside a mobile home. Visibility was severely limited due to smoke and conditions were extremely dangerous. Ms. Scroggins' actions directly hindered Captain Cash's ability to suppress the fire. In addition, there was a legitimate concern that someone was

still inside the structure creating an even greater need for teamwork. [Record Document 25-3, pp. 28-29].

On November 1, 2010, Ms. Scroggins submitted another grievance, this one complaining about the decision allowing her to remain on vacation, rather than placing her on administrative leave, and prohibiting her from working overtime before her conference. On December 6, 2010, Chief Crawford denied the grievance. He attests that "[n]ot allowing a member who is facing serious, substantiated violations to work until the matter is resolved is a common practice." Id. at 30.

### B. Subsequent Incidents[3]

Sometime in January 2011, Chief Crawford asked the Human Resources Department of the City to investigate any complaints that Ms. Scroggins may have. It is unclear from the record what exactly prompted this request. Ms. Colleen Hull of the Human Resources Department interviewed Ms. Scroggins. During the interview, she complained of harassment, discrimination and retaliation regarding the discipline from the September 20, 2010 incident. Ms. Hull interviewed a number of people, including Ms. Scroggins, Captain Taylor, and Captain Cash, and on March 4, 2011 she sent a report to Chief Crawford that concluded that there was "no misconduct based on the definitions of harassment, discrimination, and retaliation in the City's harassment policy." Id. at 36. On the twentieth of January, Ms. Scroggins also filed a charge with

---

[3] As noted below, Ms. Scroggins has abandoned any claims she may have had arising out of the following incidents. Nevertheless, in the interest of completeness, the Court includes all of the incidents addressed in the motion for summary judgment.

the EEOC, alleging race and gender discrimination and retaliation regarding her discipline.  On May 17, 2011 Ms. Scroggins supplemented her EEOC charge with allegations that Ms. Hull's finding of no misconduct itself was an act of retaliation.

Approximately one year later, on February 16, 2012, Ms. Scroggins suffered from hives while on duty.  She believed that the hives were caused by having been bitten during work.  Mr. Scott Wolverton, the Chief of Special Operations and Safety for the Shreveport Fire Department, was responsible for communicating with the department's workers' compensation carrier regarding work related illnesses.  After receiving the medical documents from Ms. Scroggins' examination, which stated that her hives were likely not caused by bites, and speaking with a representative from the workers' compensation carrier, who agreed that the injury did not appear to be work related and advised Mr. Wolverton that no incident report was necessary, Mr. Wolverton destroyed Ms. Scroggins' medical information.  He attests that he destroyed the documents because he believed they were no longer needed and in order to avoid retaining unnecessary confidential information.  Id. at 43-44.

Sometime later, Ms. Scroggins contacted Mr. Wolverton and told him that she was having trouble filling a prescription for her skin reaction.  Mr. Wolverton informed her that the carrier had denied the claim, and recommended that she contact the carrier directly.  Soon afterwards, Mr. Wolverton received a call from a representative of the carrier requesting the documentation related to Ms. Scroggins' hives.  Because he had already destroyed the original documents, Mr. Wolverton asked Ms. Scroggins to fill

out a new employee injury report.  He also asked her supervisor to complete a supervisor accident report, and Mr. Wolverton himself completed a new Form 1007.

Approximately two years later, sometime in early January, 2013, Ms. Scroggins called in sick, citing a shoulder injury.  The day before she had called in to find out which station she would be assigned to report to the next day; she had been told Station Nine.  Ms. Scroggins had already been cleared for duty once for the same shoulder injury.  After this second call, Mr. Wolverton spoke with her by phone and discussed her shoulder pain and how it was affecting her ability to perform her work duties.  He attests that as a result of the conversation, he believed it was necessary to have Ms. Scroggins cleared for work again and for her to undergo a Fitness for Duty Examination because he "anticipated she would not be cleared to return to work for at least 30 days, due to the fact that she had called in sick for the same condition just two weeks prior."  Id. at 45.  Mr. Wolverton was notified on January 25, 2013 that Ms. Scroggins was cleared for duty, and "[i]t was determined that since [she] had not been sick for 30 or more days, a Fitness for Duty Examination was not required."  Id. at 45-46.

On March 20, 2013, Ms. Scroggins filed a complaint with the Human Resources Department of the City, alleging that Mr. Wolverton harassed her and retaliated against her when he requested that she fill out additional paperwork regarding the February 16, 2011 hives incident and when he called to discuss her shoulder injury.  Arletha Gaston of the Human Resources Department investigated the matter and on May 9,

2013 determined that neither harassment nor retaliation had been proven.

## II. Legal Standards

Summary Judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating that summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion on the claim at issue, it may meet its burden of production by offering affirmative evidence in the form of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials proving that the non-moving party cannot show a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(a). When ruling on a motion for summary judgment, the Court evaluates the evidence in the light most favorable to the nonmovant and does not weigh evidence or judge credibility. EEOC v. Chevron Phillips Chem. Co., 570 F.3d 606, 615 (5th Cir. 2009). A genuine dispute for trial exists when a rational trier of fact looking at the record could find for the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Co., 475 U.S. 574, 586-87 (1986); Wallace v. Tex. Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

If the Title VII plaintiff provides no direct evidence of discrimination or retaliation, the analysis proceeds under the burden-shifting scheme created by

McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  First, the plaintiff bears the burden of presenting evidence to establish a prima facie case.  If plaintiff succeeds, then the burden shifts to the defendant to proffer a legitimate, non-discriminatory or non-retaliatory reason for its actions.  If defendant clears this hurdle, then the burden shifts back to plaintiff to show that there is a genuine question of material fact regarding whether the proffered reason was merely a pretext for discrimination or retaliation.  McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).  In the discrimination context, showing pretext requires the plaintiff to "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.  Willis v. Cleco Corp., --- F.3d ---, 2014 WL 1379103, at *3 (5th Cir. 2014) (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003).

To make out a prima facie case of discrimination, the plaintiff must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."  McCoy, 494 F.3d at 556.  "To present a prima facie case of retaliation under . . . Title VII . . . a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action."  Willis, --- F.3d ---, 2014 WL

1379103, at *3 (quoting Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004)).

## III. Analysis

### A. Discrimination

#### 1. Prima Facie Case

The City argues that Ms. Scroggins has failed to make out a prima facie case for her disparate treatment claim because she has failed to identify a similarly situated comparator. The City points out that Captain Cash and Ms. Scroggins hold significantly different levels of responsibility—most importantly, Ms. Scroggins was required to follow Captain Cash's orders—and that Ms. Scroggins' violations were significantly more serious than Captain Cash's. Ms. Scroggins argues that whether employees are "similarly situated" is a fact issue for the jury, and that because both Captain Cash and she were trying to fight the fire their relative ranks should not matter.

The Fifth Circuit has held that in order for employees to be similarly situated, their circumstances, including their misconduct, must be nearly identical. Perez v. Tex. Dept. of Crim. Justice Inst. Div., 395 F.3d 206, 213 (5th Cir. 2004).[4] Ms. Scroggins, however, directs the Court to Lee v. Kan. City So. Ry. Co., which she contends holds that a suitable comparator may be an employee who simply committed the same or

---

[4] Ms. Scroggins argues in passing that the "nearly identical" test defeats the purpose of Title VII, citing Nancy Gentner, *Loser's Rules*, 122 YALE L.J. ONLINE 109 (2012), http://yalelawjournal.org/2012/10/16/gertner.html. As she recognizes, however, this Court is bound to follow Fifth Circuit precedent, and the Fifth Circuit has adopted the "nearly identical" test. Perez, 395 F.3d at 213.

11

similar offenses:

> For example, it is sufficient that the ultimate decisionmaker as to the employee's continued employment is the same individual, even if the employees do not share an immediate supervisor. Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable. As the Supreme Court has instructed, the similitude of employee violations may turn on the "comparable seriousness" of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations. Otherwise, an employer could avoid liability for discriminatory practices simply by coding one employee's violation differently from another's.

574 F.3d 253, 260-61 (5th Cir. 2009). The panel in Lee, however, also states that "employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated," and that "[i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." Id. at 259-60 (quoting Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001)) (emphasis in original) (internal quotation marks omitted). Lee involved a train engineer who was fired for, among other things, failing to halt his train at a stop signal. Id. at 261. The Lee court also noted that because its decision turned on "the totality of the circumstances of Lee's employment," meaning primarily his infraction history as compared to another engineer who also failed to stop at a stop signal, it differed from Perez, where the analysis turned on how similar the ultimate infractions were. Id. at 261, n.25. The test is, therefore, not simply whether Ms. Scroggins

committed the same or a similar offense as Captain Cash, though that is one factor to take into account. As the Fifth Circuit held in Turner v. Kan. City So. Ry. Co., in order to be similarly situated, employees must have:

> held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. Furthermore, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions, because [i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

675 F.3d 887, 893 (5th Cir. 2012) (quoting Lee, 574 F.3d at 260).

Ms. Scroggins notes that both Captain Cash and she were in the same physical environment when the altercation occurred, that is, "in the heat of a hot fire with zero visibility." [Record Document 28-2, p.9]. She argues that "in the heat of the fire," rank does not matter because "fire persons, no matter what their rank, are charged with the same rules," and that both Captain Cash and she had a responsibility to fight the fire. Id. at 8. She also disagrees with the Fire Department's determination that she violated Captain Cash's orders, since she claims not to have know that he was a captain when she pulled on the hose.

Whether Ms. Scroggins was actually guilty of the violations is irrelevant to the question of whether she is similarly situated to Captain Cash.[5] It is true that the

---

[5] The court in Turner acknowledged that in work-rule violation cases a Title VII plaintiff "may establish a prima facie case by showing either [1] that he did not violate the rule[,] or [2] that, if he did, white employees who engaged in similar acts were not

physical circumstances of Ms. Scroggins' and Captain Cash's violations were identical. But the Court is hard put to make sense of Ms. Scroggins' unsupported argument that Captain Cash's rank is irrelevant because they were both fighting the fire. Intuitively, it would seem that in the face of a unpredictable danger like a fire, a strong hierarchy, with some people authorized to give orders and others required to obey them, would be necessary to maintain order and ensure safety. Regardless, Ms. Scroggins critically fails to offer any evidence to dispute the fact that she was punished for substantially different violations than those of Captain Cash. While the record indicates that Captain Cash was punished for cursing at a subordinate, Ms. Scroggins was punished for trying to pull the hose away from a superior. As the Fifth Circuit held in Lee, "[i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." 574 F.3d at 259-60 (quoting Wallace, 271 F.3d at 221) (emphasis in original) (internal quotation marks omitted). Ms. Scroggins has failed to present any evidence that her conduct was nearly identical to the conduct of Captain Cash; therefore she has failed to make out a prima facie case of discrimination.

---

punished similarly." 675 F.3d at 892-93 (quoting Mayberry, 55 F.3d at 1090 (quoting Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980))). Plaintiff does not, however, take this first option. She fails to cite any cases addressing it and she characterizes her arguments regarding whether she actually violated the rule as evidence that she is similarly situated to Captain Cash. Neither party specifies exactly which rules were violated by Ms. Scroggins and neither party has attached the internal affairs investigation report.

### 2. Pretext

Even if Ms. Scroggins had succeeded in making out a prima facie claim, the Court is persuaded that the City has proffered a legitimate, non-discriminatory reason for its decision—namely, that Ms. Scroggins endangered everone's safety by failing to obey Captain Cash and by trying to take the hose away while he was fighting the fire, whereas Captain Cash only cursed at Ms. Scroggins—and that Ms. Scroggins has failed to offer any evidence of pretext. In order to establish pretext, a plaintiff must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." Willis, --- F.3d ---, 2014 WL 1379103, at *3 (quoting Laxton, 333 F.3d at 578). Ms. Scroggins appears to rely only on the fact that she received harsher discipline than Captain Cash:

> Plaintiff was following Captain Reggie Taylor's order to hold up until she was pushed and cursed at by Cash. The sheer discrepancy between Plaintiff's discipline and that imposed on Cash provides credible evidence that a jury could call into question the legitimacy of the justification offered for this different treatment.

[Record Document 28-2, p.10]. In particular, she fails to offer any evidence at all that the discipline decision was motivated by race or gender.

The Court is not convinced that the discrepancy between the punishment of Ms. Scroggins and Captain Cash is evidence of pretext. If discrepancy in punishment alone were sufficient to show pretext, then by definition any disparate impact claim that made it to the pretext analysis would pass muster. At most, Ms. Scroggins has offered evidence, in the form of her own testimony, that the Fire Department erred when it

15

either disregarded or did not believe her testimony that she did not know Captain Cash was a Captain when she pulled on the hose. But even assuming the Fire Department did err in this way, that error has nothing to do with race or gender and therefore is not evidence of pretext. See Le Maire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007) (since "anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones[,] . . . [s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."). Accordingly, Ms. Scroggins has failed to raise a genuine dispute of fact regarding whether the reason given for her discipline was pretextual.

### B. Retaliation

Ms. Scroggins' claims that she was retaliated against when she was disciplined and not placed on administrative leave need not detain the Court long. Ms. Scroggins has failed to point to any evidence showing that she engaged in activity protected by Title VII prior to when these employment decisions were made. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceedings, or hearing under Title VII." Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003). Neither the September 23, 2010 grievance nor the September 22, 2010 police report mention complaints of gender or race discrimination or suggest in any way that the events of September 20, 2010 were unlawful under Title VII. Ms. Scroggins argues that no "magic words" are required to engage in protected activity and that because

she "made a written internal complaint and followed the same with a charge to the EEOC. . . [c]learly [she] has satisfied this prong." [Record Document 28-2, p.11] (citing Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006)).[6] It is undisputed, however, that the EEOC charge was not filed until January 20, 2011, which was more than two months after the allegedly retaliatory discipline and administrative leave decisions were made. Ms. Scroggins has failed to show that she took any protected activity before either of these decisions; therefore she has failed to make out a prima facie case of retaliation for either of them.

    C.    **Other Claims**

In an answer to an interrogatory, Ms. Scroggins appears to contend that the March 4, 2011 decision of the Human Resources Department that her discipline was not harassment, discrimination, or retaliation under the City's harassment policy was itself retaliation. [Record Document 25-3, p. 59]. The City also, perhaps out of an abundance of caution, notes that Ms. Scroggins alleges that Mr. Wolverton's January 2013 contact with her regarding her shoulder injury and his 2011 request that she

---

[6] Ms. Scroggins also cites cases holding that oral and informal complaints are sufficient to trigger the non-retaliation provisions of Title VII and the Fair Labor Standards Act. See e.g. Kasten v. Saint-Gobain Performance Corp., 1131 S.Ct. 1325 (2011) (oral complaints are sufficient to trigger anti-retaliation provisions of the Fair Labor Standards Act ). The problem, however, is not that Ms. Scroggins' complaints were informal or oral, but that there is no evidence that she complained of discrimination in any way prior to her discipline and temporary exclusion from the workplace.

resubmit paperwork regarding her hives both constitute retaliation and discrimination.[7] If Ms. Scroggins ever intended to pursue these claims, she has abandoned them at this point, as she has offered no argument or evidence to make out a prima facie case with respect to any of them. [Record Document 28-2, pp. 7-9, 10-14].

### IV. Conclusion

For the reasons given above, the City's Motion for Summary Judgment [Record Document 25] is **GRANTED**, and Ms. Scroggins' claims are hereby **DISMISSED with prejudice**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 5th day of June, 2014.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[7] The Court was unable to find anywhere in the record where these claims were asserted by Ms. Scroggins.